UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FELICIA ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 21-cv-10727<br>Honorable Victoria A. Roberts<br>Magistrate Judge Elizabeth A. Stafford |

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 15, 16)

### I.    Introduction

Plaintiff Felicia Anderson appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for supplemental security income (SSI) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court **RECOMMENDS** that:

- Anderson's motion (ECF No. 15) be **DENIED**;

- the Commissioner's motion (ECF No. 16) be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## II.    Background

### A.  Anderson's Background and Disability Application

Born in March 1976, Anderson was 40 years old at the time of her application.  ECF No. 9, PageID.52.  Anderson had no past relevant work.  *Id.* at PageID.51.  She claimed to be disabled from depression, bipolar disorder, memory problems, head injury, vision issues, headaches, blackouts, pelvic pain, asthma, incontinence, and spinal issues.  *Id.* at PageID.146-147.  Anderson's alleged onset date for her disability was in November 2016.  *Id*. at PageID.44.

Anderson appeared at a hearing in February 2019, and the ALJ denied her claim.  *Id.* at PageID.90, 170-180.  The Appeals Council remanded the ALJ's denial, and Anderson appeared at a second hearing in July 2020.  *Id.* at PageID.44, 185-189.  Anderson and a vocational expert (VE) testified at the second hearing.  *Id.*  In the decision that followed, the ALJ found Anderson not disabled.  *Id.* at PageID.53.  The Appeals Council denied review, and the ALJ's decision became the final decision of the

2

Commissioner.  *Id.* at PageID.30.  Anderson timely filed for judicial review.
ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than 12 months."
42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by
analyzing five sequential steps.  First, if the applicant is "doing substantial
gainful activity," he or she will be found not disabled.  20 C.F.R.
§ 416.920(a)(4).  Second, if the claimant has not had a severe impairment
or a combination of such impairments[1] for a continuous period of at least
12 months, no disability will be found.  *Id.*  Third, if the claimant's severe
impairments meet or equal the criteria of an impairment set forth in the
Commissioner's Listing of Impairments, the claimant will be found disabled.
*Id.*  If the fourth step is reached, the Commissioner considers its
assessment of the claimant's residual functional capacity (RFC), and will

---

[1] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  20 C.F.R.
§ 416.920(c).

find the claimant not disabled if he or she can still do past relevant work.

*Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Anderson was not disabled. At the first step, he found that she had not engaged in substantial gainful activity since the application date. ECF No. 9, PageID.46. At the second step, the ALJ found that Anderson had the severe impairments of asthma, degenerative changes in the lumbar spine with radiculopathy, bipolar disorder, post-traumatic stress disorder (PTSD), borderline personality disorder, antisocial personality disorder, and obesity. *Id.* Next, the ALJ concluded that none of her impairments, either alone or in

combination, met or medically equaled the severity of a listed impairment.

*Id.* at PageID.47.

Between the third and fourth steps, the ALJ found that Anderson had

the RFC to perform sedentary work,[2] except she could only

> lift up to 10 pounds occasionally; occasionally climb ladders,
> ropes, and scaffolds; occasionally climb ramps and stairs;
> occasionally balance, stoop, crouch, kneel, and crawl; frequent
> handling and fingering of objects; limited to jobs using quad
> cane at all times when standing and the contralateral upper
> extremity can be used to lift and carry up to exertional limits;
> avoid concentrated exposure to extreme cold, extreme heat,
> excessive humidity; occasional exposure to excessive
> environmental irritants such as fumes, odors, dusts, and gases;
> avoid all use of hazardous, moving machinery and all exposure
> to unprotected heights; and based on mental and physical
> symptoms, limited to simple, routine tasks learned in 30 days or
> less free of fast-paced production requirements with simple,
> work related decisions and few, if any, workplace changes; and
> occasional interaction with the public, coworkers, and
> supervisors.

*Id.* at PageID.48.  At step four, the ALJ found that Anderson had no past

relevant work.  *Id.* at PageID.51.  At the final step, after considering

Anderson's age, education, work experience, RFC, and the testimony of

the VE, the ALJ also concluded that she could perform jobs that existed in

---

[2] Sedentary work involves lifting or carrying no more than ten pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; standing or walking for two hours out of an eight-hour workday; and sitting for six hours out of an eight-hour workday.  20 C.F.R. § 416.967(a); Social Security Regulation (SSR) 83-10.

significant numbers in the national economy, including inspector, sorter, and assembler.  *Id.* at PageID.52.  The ALJ thus concluded Anderson was not disabled.  *Id.* at PageID.53.

## III.   Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).

Anderson argues that the Court should remand this matter because (1) the ALJ erred by failing to find that her closed head injury and incontinence were severe impairments, (2) the RFC is not supported by substantial evidence, (3) the ALJ ignored a medical opinion and a state agency's disability determination, and (4) the ALJ disregarded caregiver

6

Stacy Diggs's testimony, as the Appeals Council ordered.  ECF No. 15, PageID.900.  The Court finds that Anderson's arguments lack merit and that the ALJ's decision should be affirmed.

**B.**

Anderson first challenges the ALJ's step two finding that her head injury and incontinence were not medically determinable impairments.  ECF No. 9, PageID.47; ECF No. 15, PageID.906-907.  Anderson argues that those alleged impairments were medically determinable and severe.  ECF No. 15, PageID.906-907.

At step two, an ALJ first assesses whether the plaintiff has "a medically determinable impairment(s), then determine[s] whether [the] impairment(s) is severe."  20 C.F.R. § 416.921.  A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*  It must be shown by objective medical evidence and cannot be based on a plaintiff's "statement of symptoms, a diagnosis, or a medical opinion."  *Id.*  Objective medical evidence includes medical signs and laboratory findings using diagnostic techniques.  SSR 16-3p; *Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 421 (6th Cir. 2013) ("The plaintiff still bears the burden of

7

demonstrating that he suffers from a medically determinable physical impairment—a burden that requires medical signs and laboratory findings.") (cleaned up).

### 1.

Anderson claims that she suffered a closed head injury that caused chronic headaches, memory loss, right-sided weakness, incontinence, chronic lower back pain, blurred vision, blackouts, and intellectual decline.[3] ECF No. 9, PageID.93, 557-558, 628.  No objective medical evidence supports this claim.  Anderson's primary care physician Kamran Zakaria, M.D., and consultative examiner Moises Alviar, M.D., diagnosed a closed head injury.  *Id.* at PageID.507, 517-518, 531-532, 628, 632, 638, 702, 707, 874.  But these diagnoses were based on Anderson's own reports rather than on any examination findings, laboratory findings, or imaging.  *See id.*

While Zakaria noted that Anderson functioned "like a[n] 8 year old mentally" and had slow mentation and moderate intellectual abilities, no records show that these symptoms stemmed from a closed head injury.  *Id.* at PageID.517-518, 532.  And Dr. Zakaria said in June 2020 that he never received Anderson's old records about her head injury and that he was "not

---

[3] Anderson told consultative examiners that the injury occurred in 2000 or 2001 but told her primary care physician and the ALJ that it occurred in 2010.  ECF No. 9, PageID.102, 546, 557, 637.

sure how much of her symptoms are genuine and if there is any malingering." *Id.* at PageID.874.  Dr. Zakaria tried to learn more by repeatedly referring Anderson to a neurologist to assess her head injury, but she never complied. *Id.* at PageID.628, 632, 638, 874.  And Anderson told Dr. Alviar that she was told to get an EEG or brain wave test but that "she did not want it done." *Id.* at PageID.558.

Psychiatric consultative examiner Herman Daldin, Ph.D., noted that Anderson claimed to have suffered a closed head injury. *Id.* at PageID.546.  But based on Anderson's inconsistent response styles and lack of sincere effort during the mental status examination, Dr. Daldin concluded that "she seemed to be greatly exaggerating for secondary gain." *Id.* at PageID.546-547.  For example, Anderson reported the details of her work history and psychiatric treatment but responded to questions about her surgical history by pointing to parts of her body. *Id.* at PageID.546.  And she claimed she could not recall a series of two numbers. *Id.* at PageID.548.  State-agency reviewer Twaide Langham, D.O., was also skeptical of Anderson's closed head injury, noting that Anderson remained employed in semi-skilled jobs from 2006 to 2010 and did not complain of symptoms until 2016 although the injury occurred in 2000. *Id.* at PageID.155-156.

9

In sum, Anderson fails to meet her burden of showing that she had a medically determinable closed head injury.

**2.**

Anderson also puts forth no objective evidence that her incontinence is a medically determinable impairment.  Dr. Zakaria diagnosed Anderson with unspecified urinary incontinence in June 2016 and included this assessment in medical opinions and some office visit notes.  ECF No. 9, PageID.507, 518, 532, 619, 702, 707, 874.  But Dr. Zakaria stated in November 2016 that there was "no diagnosis" for Anderson's incontinence. *Id.* at PageID.514.  And while he told Anderson twice to follow up with a urologist for the problem, there is no record that she complied.  *Id.* at PageID.514, 532.

In arguing that the ALJ erred, Anderson cites her own reports that she has no control of her bowels and bladder and statements from her caregiver, Stacy Diggs, that Anderson was incontinent and required diapers.  *See* ECF No. 9, PageID.78, 119-120, 393-394, 715.  But statements by a caregiver and self-reports are not the objective medical evidence required to establish a medically determinable impairment.  *See* 20 C.F.R. § 416.921; *Leeper v. Colvin*, No. CIV-14-1401-HE, 2016 WL

696942, at *2 (W.D. Okla. Jan. 11, 2016), *adopted*, 2016 WL 715751 (W.D. Okla. Feb. 22, 2016).

Thus, the evidence fails to show that Anderson's incontinence was a medically determinable impairment.

## C.

Anderson next contends that the RFC is not supported by substantial evidence, as it does not include adequate limitations for her alleged closed head injury, incontinence, mental impairments, and medication side effects. ECF No. 15, PageID.910-911.  In assessing an RFC, an ALJ "must consider *only* limitations and restrictions attributable to medically determinable impairments."  SSR 96-8p (emphasis added); *see also Kendalee L. R. v. Kijakazi*, No. 4:21-cv-00141, 2022 WL 4599184, at *7 (D. Idaho Sept. 30, 2022). Thus, for the reasons above, the ALJ had no duty to include limitations attributable to closed head injury or incontinence.  And Anderson fails to sustain her burden of showing that she needed a more restrictive RFC for her mental impairments and medication side effects. *See Jordan v. Comm'r of Soc. Sec*., 548 F.3d 417, 423 (6th Cir. 2008).

**1.**

Anderson claims that she would be excessively off-task or absent from work because of her mental impairments.  ECF No. 15, PageID.912-913.  The ALJ noted that Anderson received limited treatment for her mental impairments before being discharged for failing to go to her appointments and considered treatment notes stating that Anderson had slowed mentation and flat affect and suggestions that Anderson was malingering.  ECF No. 9, PageID.50.  Given Anderson's "variable psychiatric symptoms and lack of treatment," the ALJ concluded that her mental conditions were not disabling.  *Id.*  But he found that her "impaired mentation and memory issues" and "social deficits and personality disorder diagnoses" supported a limitation to simple, routine tasks that can be learned in 30 days or less with no production pace; only work-related decisions; infrequent changes; and occasional interaction with the public, coworkers, and supervisors.  *Id.*  And the ALJ found that Anderson's claims of disability were unsupported given the lack of psychiatric care, conflicting assessments, and suggestions of malingering.  *Id.* at PageID.50-51.

The ALJ's reasoning and conclusions are supported by substantial evidence.  In March 2016, Janine Guastella, TLLP, and Kelly Gardiner, PMHNP, diagnosed Anderson with bipolar disorder, borderline personality

12

disorder, antisocial personality disorder, and PTSD.  *Id.* at PageID.487.

Anderson was referred to a neurologist based on her complaints of

hallucinations.  *Id.* at PageID.488.  Gardiner noted that a 2014 EEG was

normal but that Anderson needed a new EEG and MRI.  *Id.*  Gardiner also

observed that Anderson had a history of noncompliance, as she missed

appointments, failed to follow through on recommendations, did not

participate in therapy sessions, and asked to leave before appointments

were completed.  *Id.* at PageID.488-489.  Anderson was discharged from

the therapy program.  *Id.* at PageID.487.

In June 2016, Dr. Zakaria referred Anderson to a neurologist because

she had diminished memory and concentration and the mental functioning

of an eight-year-old.  *Id.* at PageID.531-532.  Dr. Zakaria's neurologic

examination findings were normal, except that Anderson walked slowly with

a quad cane.  *Id.*  During an August 2016 exam, Dr. Zakaria noted that

Anderson was active, alert, and oriented and had good judgment, poor

insight, a flat affect, slow mentation, normal recent memory, and abnormal

remote memory.  *Id.* at PageID.517-518.  Anderson denied hallucinating or

having suicidal thoughts.  *Id.* at PageID.517.  Dr. Zakaria again referred

Anderson to a neurologist.  *Id.* at PageID.518.  He also completed a form

for Anderson's state disability claim including diagnoses of closed head

13

injury, asthma, bipolar disorder, PTSD, borderline personality disorder, and antisocial personality disorder.  *Id.* at PageID.507.  He stated that Anderson required assistance with most personal care activities and that she could not work at any job.  *Id.*

In November 2016, Anderson complained to Dr. Zakaria of falling, blackouts, increased anxiety, incontinence, and pain.  *Id.* at PageID.511, 513.  But Dr. Zakaria's psychiatric and neurologic findings were normal, as Anderson had good insight and judgment, was active, alert, and oriented, and had good recent and remote memory.  *Id.* at PageID.513-515.  In October 2017, Dr. Zakaria observed that Anderson had poor insight; a lethargic, apathetic affect; was oriented; and had normal recent and remote memory.  *Id.* at 638.  In December 2017, Dr. Zakaria noted Anderson's complaint that her speech was deteriorating, but his psychological findings remained unchanged from the previous visit.  *Id.* at PageID.631-632.  Neurologic examination findings were normal.  *Id.*

In April 2018, Dr. Zakaria made the same psychological observations but noted that Anderson's remote memory was abnormal and that her mentation was slow.  *Id.* at PageID.627.  He also stated that Anderson had not seen a psychiatrist for her bipolar disorder for some time.  *Id.*  Again, Anderson denied hallucinating or having suicidal thoughts.  *Id.* at

14

PageID.626.  Dr. Zakaria's psychological findings were the same for the rest of Anderson's visits through October 2019, except that she had normal recent and remote memory.  *Id.* at PageID.615, 702, 706, 711, 715.

In a medical opinion dated June 2020, Dr. Zakaria diagnosed Anderson with bipolar disorder but stated that he never received any of her psychiatric reports.  *Id.* at PageID.874.  Dr. Zakaria described Anderson as "enigmatic to [him]" when asked whether she had any mental impairments. *Id.* at PageID.875.  He was unsure whether Anderson's delayed response to questions and trouble putting words together were genuine or if she was malingering.  *Id.* at PageID.874.  And when he found that Anderson was likely to be off-task 25% or more of the time, he reiterated that he was "not sure [if she was] genuine or not!"  *Id.* at PageID.875.  Still, Dr. Zakaria found Anderson incapable of even low stress jobs as she "behaves as a totally disabled person would."  *Id.*

As noted, Dr. Daldin suspected after his May 2017 evaluation that Anderson was "greatly exaggerating" her symptoms, as her mannerisms and response styles were "very inconsistent," and she was "completely disinterested and apathetic" during the intelligence testing and mental status examination.  *Id.* at PageID.546-547.  He found that "there was insufficient supporting medical evidence or other objective data to support

15

[Anderson's] allegations of psychosis or cognitive impairments." *Id.* Dr. Daldin concluded that Anderson could follow simple, routine directions and appropriately interact with others in a work or social environment. *Id.*

State-agency reviewing physician Jerry Csokasy, Ph.D., determined in August 2017 that Anderson was mildly limited in understanding, remembering, and applying information; moderately limited in interacting with others; moderately limited in concentrating, persisting, and maintaining pace; and mildly limited in adapting or managing herself. *Id.* at PageID.154. He found that Anderson could perform unskilled work with simple instructions and only routine changes, no independent decisions, and no fast-paced hourly production rates. *Id.* She could have only occasional contact with her supervisor, brief and superficial interactions with coworkers, and incidental contact with the public. *Id.*

After assessing this evidence, the ALJ found that Anderson had diminished memory, concentration, and slowed mental functioning, and that her mental impairments caused a flat, apathetic affect and difficulty getting along with others. *See id.* at PageID.517-518, 531-532, 615, 627, 631-632, 638, 702, 706, 711, 715. To account for those limitations, he limited Anderson to simple, routine, unskilled tasks with no fast-paced production demands, only work-related decisions, infrequent changes, and occasional

16

interaction with others.  This RFC is more restrictive than Dr. Daldin's and is almost identical to Dr. Csokasy's.  *Id.* at PageID.154, 549.  "Courts in this circuit have routinely found RFC assessments that are more restrictive than the opinion evidence to be supported by substantial evidence." *Letourneau v. Comm'r of Soc. Sec.*, No. 20-CV-13139, 2022 WL 4477326, at *8 (E.D. Mich. May 24, 2022), *adopted*, 2022 WL 4472440 (E.D. Mich. Sept. 26, 2022).

Anderson cites evidence that she believes supports greater restrictions to address her mental impairments.  ECF No. 15, PageID.912-913.  But because substantial evidence supports the ALJ's RFC, remand is not warranted.  "If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (cleaned up).

**2.**

Anderson also insists that the ALJ did not adequately evaluate the side effects of her medications on her mental RFC.  ECF No. 15, PageID.913.  She testified during the hearing that her medications caused fatigue and increased bathroom visits and that a former medication caused

hallucinations.  ECF No. 9, PageID.77-78.  And Diggs stated in a function

report that Anderson's medications caused dizziness, fatigue, weakness,

nausea, and increased urine.  *Id.* at PageID.400.  The Court finds no error.

ALJs must consider the side effects of a claimant's medications.  20

C.F.R. § 416.929(c)(3).  But there is no mandate that the ALJ mention side

effects in the written decision.  *Stec v. Comm'r of Soc. Sec.*, 432 F. Supp.

3d 719, 727 (E.D. Mich. 2020).  The ALJ here asked Anderson about side

effects during the hearing and noted in the opinion that her claim that she

sleeps during the day was unsupported because there was no reference to

it in the medical records.  ECF No. 9, PageID.49-50, 77-78.  Thus, the ALJ

considered the side effects of Anderson's medications.  *See Flynn v.

Comm'r of Soc. Sec.*, No. 2:17-cv-11640, 2018 WL5306640, at *4 (E.D.

Mich. Aug. 1, 2018), *adopted*, 2018 WL 5305077 (E.D. Mich. Aug. 24,

2018) (remand was not warranted even though the ALJ did not discuss a

medication side effect in the opinion because it was discussed at the

hearing).

And Anderson's medical records do not confirm that her medications

caused significant side effects.  Although she complained to Dr. Zakaria

that her pain medications were not working and that she suffered from

fatigue and incontinence, she did not claim that her medications caused

side effects.  ECF No. 9, PageID.513, 631, 637, 706, 715.  "Where, as here, a claimant testifies that she experiences medication side effects, but the medical records make no indication that she reported medication side effects to her physicians, an ALJ does not err in finding that the claimant suffered no adverse side effects from her medications."  *Nyhus-Dell v. Comm'r of Soc. Sec.*, No. 18-CV-10132, 2019 WL 2051895, at *4 (E.D. Mich. Feb. 5, 2019), *adopted*, 2019 WL 1349617 (E.D. Mich. Mar. 26, 2019).

Thus, the ALJ's RFC is supported by substantial evidence.[4]

**D.**

Anderson contends that the ALJ ignored a mental assessment by Theadia Carey, M.D., that was issued for Anderson's state disability benefits claim through the Michigan Department of Health and Human Services (MDHHS), and that the ALJ ignored the MDHHS's disability determination.  ECF No. 15, PageID.916-917.  These arguments lack merit.

---

[4] Anderson argues that the ALJ erred at step five by not including greater limitations in the hypothetical posed to the VE.  ECF No. 15, PageID.914-915.  But An ALJ does not err by relying on a VE's response to a hypothetical question if the hypothetical accurately represents the RFC. *Luteyn v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 739, 744 (W.D. Mich. 2007).  The hypothetical here matched the limitations in the RFC.  ECF No. 9, PageID.48, 82-87.

**1.**

In May 2014, before Anderson's 2016 alleged onset date, Dr. Carey, found that Anderson had moderate limitations in understanding and memory and marked limitations in sustained concentration and persistence. ECF No. 9, PageID.569.  Dr. Carey diagnosed bipolar disorder, PTSD, borderline personality disorder, and antisocial personality disorder.  *Id.* at PageID.571.  The ALJ briefly addressed Dr. Carey's assessment, finding that the opinion conflicted with other mental status examination findings and the fact that Anderson could attend medical appointments alone.  *Id.* at PageID.47-48.

The ALJ's brief assessment of Dr. Carey's opinion is not reversible error.  When "the ALJ's decision is otherwise supported by substantial evidence, the failure to mention even a treating source's opinion predating the [relevant period] is, at most, harmless error."  *Moore v. Colvin*, No. 14-12310, 2015 WL 4066735, at *4 (E.D. Mich. July 2, 2015).  Since the mental RFC is supported by substantial evidence as determined above, the ALJ's failure to discuss Dr. Carey's assessment at greater length is harmless error.

**2.**

In November 2017, an MDHHS ALJ found that Anderson was disabled.  ECF No. 9, PageID.574-580.  Anderson complains that the ALJ below neglected to consider the MDHHS decision.  ECF No. 15, PageID.917.

"A decision by another government agency as to an individual's disability is not binding upon the Social Security Administration."  *Turcus v. Soc. Sec. Admin.*, 110 F. App'x 630, 632 (6th Cir. 2004).  But the "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered," and ALJs "should explain the consideration given to these decisions."  SSR 06-03p, 2006 WL 2329939.[5]  The ruling explains, "These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules."  *Id.*

In *Saunders v. Comm'r of Soc. Sec.*, the court found that SSR 06-03p does not mandate that an ALJ explain his consideration of another agency's disability decision.  No. 1:08-cv-1136, 2010 WL 1132286, at *8

---

[5] Since Anderson applied for SSI in November 2016, before SSR 06-03p was rescinded in March 2017, that ruling still applies.  *See* 20 C.F.R. § 416.904 (applies to claims filed on or after March 27, 2017).

(W.D. Mich. Mar. 3, 2010).  Other courts have found error when ALJ failed to explain his consideration of the other agency's opinion.  *See Sallah v. Comm'r of Soc. Sec.*, No. 16-14098, 2018 WL 1322064, at *7-*9 (E.D. Mich. Feb. 23, 2018), *adopted*, 2018 WL 1316164 (E.D. Mich. Mar. 14, 2018).  This Court need not weigh in on this split of authority because any error here would be harmless.

In *Saunders*, the ALJ's failure to provide a full explanation was at most a harmless error because the state's decision was based on "bare conclusions," in that the hearing decision did not describe a hearing with sworn testimony and did not cite medical records that supported the state's conclusion.  2010 WL 1132286 at *8.  If the other agency's decision "would have been useless for social security consideration," any error is harmless.  *Vanderpool v. Comm'r of Soc. Sec.*, No. 12-13727, 2013 WL 5450276, at *1 (E.D. Mich. Sept. 30, 2013).

The MDHHS decision here is useless for Social Security consideration.  The decision stated that Anderson had "physically disabling impairments including bipolar disorder, PTSD, borderline personality disorder, antisocial personality disorder, head injury and asthma."  *Id*. at 574-575.  Those diagnoses alone say nothing about their severity.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis,

22

of course, says nothing about the severity of the condition.").  And the MDHHS decision's conclusion that the cited impairments were disabling was not supported by "medical opinions" for Social Security disability determinations.

Under Social Security regulations for claims filed before March 27, 2017, "medical opinions" were defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the] symptoms, diagnosis, prognosis, what [she] can do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).  The MDHHS ALJ did not describe "medical opinions"; he described a few bare conclusions.  For example, a January 2013 opinion was cited only for its conclusion that Anderson was diagnosed with PTSD and depression.  *Id.* at 575.  Another cited opinion found that she had "problems with concentration, memory, information, calculation, abstract thinking and judgment."  *Id.* at 575-576.  Anderson's own testimony was the only opinion about her RFC described in the MDHHS decision.  *Id.* at 575.

Thus, the MDHHS decision was useless for the ALJ's evaluation of Anderson's RFC assessment and disability decision, and there is no reason to believe that consideration of the MDHHS decision might lead to a

different result.  *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004).  "[R]emand would be an idle and useless formality" that would "convert judicial review of agency action into a ping-pong game."  *Id.* (cleaned up).

**E.**

Anderson contends that the ALJ violated the Appeals Council's remand order requiring "further consideration of Ms. Diggs' testimony." ECF No. 9, PageID.188; ECF No. 15, PageID.901-906.  The remand order aligned with SSR 06-03p, which requires that ALJs' decisions reflect the weight they give to the opinions of non-medical professionals and the reasoning for that determination.

Diggs did not testify at the hearing on remand.  At the earlier hearing, Diggs described helping Anderson four to seven days a week with personal care and chores such as cooking, cleaning, laundry, and grocery shopping. ECF No. 9, PageID.112-116.  Diggs claimed to organize Anderson's medications and call her to remind her to take them, and that Anderson's complaints of pain and difficulties with social interaction worsened over time.  *Id.* at PageID.115, 117.  Diggs also stated that Anderson wore diapers for incontinence, had a toilet next to her bed, and wore a card

24

around her neck with Diggs's contact information in case she got lost.  *Id.*
at PageID.119-120.

Diggs made similar statements in a function report.[6]  She stated that
Anderson suffered from right-sided weakness, hearing voices, anxiety,
panic attacks, vision issues, headaches, back issues, incontinence, pain
throughout her body, asthma, balance issues, bouts of rage, multiple
personalities, memory loss, blackouts, and slurred speech.  *Id.* at
PageID.393-394, 400.  Diggs reported helping Anderson with personal
care, cleaning, cooking, medications, and grocery shopping, and that she
took Anderson to medical appointments.  *Id.* at PageID.394-396.  Diggs
stated that Anderson was verbally abuse and aggressive, could only walk a
few steps, and could not follow simple instructions.  *Id.* at PageID.398.

The ALJ gave her prior testimony "little credence," stating that
Anderson's "physical examinations, the MRI, and limited treatment" did not
show that Anderson was as dependent on Diggs as alleged.  ECF No. 9,

---

[6] Anderson also argues that the ALJ erred by not discussing the function
report completed by Diggs.  ECF No. 15, PageID.902.  But the fact that the
ALJ did not cite or reference the function report does not mean he did not
consider it.  An ALJ "is not required to analyze the relevance of each piece
of evidence individually.  Instead, the regulations state that the decision
must contain only 'the findings of facts and the reasons for the decision.'"
*Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011)
(quoting 20 C.F.R. § 404.953); *see also* 20 C.F.R. 416.1453.

PageID.51.  Thus, as required by the remand order and SSR 06-03p, the ALJ considered Diggs' statements and explained the weight that he gave them.

Anderson argues that the ALJ did not give Diggs's statements adequate weight because substantial evidence supports her description of Anderson's limitations.  ECF No. 15, PageID.902-906.  But the ALJ had the discretion to determine the weight to give Diggs's statements.  *Noto v. Comm'r of Soc. Sec*., 632 F. App'x 243, 248 (6th Cir. 2015) ("The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record.").  And this Court lacks the authority to re-weigh the evidence based on Anderson's recitation of medical findings that she believes supports Diggs' statements.  *Hatmaker*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013); *Cutlip*, 25 F.3d 284, 286.

What is more, the evidence Anderson cites does not support her claim of disability.  She lists some abnormal examination findings that say nothing about her functional limitations.  ECF No. 15, PageID.902-903.  Anderson also cites a February 2018 lumbar MRI that revealed mild broad disc bulging effacing the ventral thecal sac at L4-L5 and moderate facet arthropathy at L4-L5 and L5-S1.  *Id.*; ECF No. 9, PageID.667.  But the MRI

also showed normal position and signal in the conus and normal disc spacing. *Id.* at PageID.667. No disc herniation or spinal or foraminal stenosis was present at L1 through S1. *Id.* In an April 2018 report, Dr. Zakaria described the MRI as normal. *Id.* at PageID.626.

In sum, the ALJ considered Diggs' statements about Anderson's limitations and explained why he gave them little credence, and Anderson's challenge to the ALJ's conclusions lacks merit.

## IV.   Conclusion

The Court **RECOMMENDS** that Anderson's motion for summary judgment (ECF No. 15) be **DENIED**, the Commissioner's motion for summary judgment (ECF No. 16) be **GRANTED**, and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: December 8, 2022

## <u>NOTICE TO THE PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 8, 2022.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
